# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ULTIMATE HOME PROTECTOR PANS, INC. d/b/a DRIPTITE, <br><br>       Plaintiff, <br><br>       v. <br><br> CAMCO MANUFACTURING, INC., <br><br>       Defendant. | 1:19CV280 |
| ULTIMATE HOME PROTECTOR PANS, INC. d/b/a DRIPTITE, <br><br>       Plaintiff, <br><br>       v. <br><br> HAIER US APPLIANCE OPERATION, LLC, d/b/a GE APPLIANCES, and HAIER US APPLIANCE SOLUTIONS, INC., d/b/a GE APPLIANCES, <br><br>       Defendants. | 1:19CV675 |

## <u>BRIEF SUPPORTING MOTION TO DISMISS AND FOR DEFAULT JUDGMENT</u>

Defendants Camco Manufacturing, Inc. ("Camco"), Haier US Appliance Operation, LLC ("HUSAO"), and Haier US Appliance Solutions, Inc. ("HUSAS") (together, the "Haier Defendants") (collectively, "Defendants"), submit this brief in support of their Motion to Dismiss and for Default Judgment.

## MATTER BEFORE THE COURT AND PROCEDURAL FACTS

Driptite's Complaint in Case 1:19CV280 (Doc. 1) alleges that Camco makes, uses, and offers to sell at least three washing machine drain pans that infringe U.S. Patent No. 8,393,351 (the "'351 Patent"). (1:19CV280, Doc. 1, ¶ 11.) Driptite's Complaint in Case 1:19CV675 (Doc. 1) alleges that the Haier Defendants also infringed the '351 Patent by selling a "Low Profile Universal Washing Machine Flood Tray." (1:19CV675, Doc. 1, ¶ 16.) Upon a joint motion, these cases were consolidated on August 12, 2019 (Doc. 18) as, among other reasons, the same patent is at issue and the Defendants' products at issue are all very similar and made by Camco.

After the resolution of a motion to dismiss, on March 25, 2020, Camco and the Haier Defendants filed, and served via the Court's ECF system, their respective Answers and Counterclaims against Driptite (Doc. 22, 23) (the "Counterclaims"). Per Rule 12(a) of the Federal Rules of Civil Procedure, Driptite's answer or other response to Defendants' Counterclaims was due no later than April 15, 2020. Fed. R. Civ. P. 12(b).

2

As Driptite did not timely file an answer or other response to the Counterclaims, the Clerk of Court entered default against Driptite on May 8, 2020. (Doc. 33).

Alleging specific, detailed facts and attaching supporting exhibits, the Counterclaims seek, among other things, a declaratory judgment that U.S. Patent No. 8,393,351 (the "'351 Patent") upon which Plaintiff's claims are based (i) is invalid based on prior art, (ii) is unenforceable as a result of inequitable conduct before the U.S. Patent and Trademark Office, and (iii) is not infringed by the devices for which Plaintiff asserts infringement.

Specifically, the Counterclaims allege that '351 Patent is invalid due to Camco's sale of pans substantially identical to the allegedly infringing devices for decades (at least by 1983) prior to the patent application (Doc. 22 ¶¶ 5-19 & Exs. A through J, Docs. 22-1 through -10; Doc. 23 ¶¶ 6-20 & Exs. A through J, Docs. 23-1 through -10), Driptite's own advertisement and sale of anticipating prior art more than one year prior to the date of the patent application (Doc. 22 ¶¶ 22-29; Doc. 23 ¶¶ 23-30), and the sale of anticipating third party pans, such as the Super Tuf Drain Pan, more than

3

one year prior to the date of the patent application (Doc. 22 ¶¶ 20-21; Doc. 23 ¶¶ 21-22).

Furthermore, the '351 Patent is unenforceable due to the willful misrepresentation by the patent applicant (Frank L. Carter) that a device sized to contain both a washing machine and dryer was distinguished from the prior art on that basis alone when in fact Driptite had itself disclosed such devices and offered them for sale more than one year prior to the date of the patent application. (Doc. 22, ¶¶ 22-51 & 53-59; Doc. 23 ¶¶ 23-52 & 54-60).

And, the Defendants' pans do not infringe, in any event, as they fail to meet all the limitations of the '351 Patent in that they fit only a single appliance, they do not include a detachable slide wedge which engages with the front wall, and they do not include a damping means secure to a substantially flat bottom panel. (Doc. 22 ¶¶ 61-68, Doc. 23 ¶¶ 62-29).

On March 31, 2020, and April 1, 2020, all of Driptite's attorneys of record filed motions to withdraw. (Doc. 24, 25, 26). Counsel stated that Driptite had been informed of all filing deadlines. (Doc. 26 at 2).

4

On April 6, 2020 documents dated April 2 were filed by Frank Carter, the self-identified President of Driptite, seeking permission to represent Driptite. (Docs. 27, 28). These documents refer to Driptite as the "Plaintiff/Counterclaim Defendant."

By e-mail on April 9, 2020, counsel for Driptite acknowledged the Counterclaims and the deadline for Driptite to plead or otherwise respond to the claims. (Doc. 32-1 at 2).

On April 9, 2020, the Court granted the motions to withdraw by Driptite's counsel, denied Mr. Carter's motion, ordered that Driptite shall engage substitute counsel and that such new counsel shall make a general appearance within 30 days of the Order, and warned that a failure to do so may result in dismissal of the case. (Doc. 29).

Contrary to the Court's April 9, 2020 order, no counsel has entered an appearance on behalf of Driptite within the 30 days allowed by the Court.

## QUESTIONS PRESENTED

I. Should default judgment be entered against Plaintiff and in favor of Defendants on Defendants' Counterclaims?

II. Should Plaintiff's claims against Defendants be dismissed pursuant to Rule 41(b) as a result of Driptite's failure to comply with the Court's April 9, 2020 Order?

## ARGUMENT

### I. Default judgment on all claims against Plaintiff is appropriate.

"Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. However, the defendant is not deemed to have admitted conclusions of law . . . ." *Harris v. Blue Ridge Health Servs., Inc.*, 388 F. Supp. 3d 633, 637 (M.D.N.C. 2019) (citations and internal quotations marks omitted); *see* Fed. R. Civ. P. 8(b)(6). The party seeking default judgment must show: (1) that the defaulted party was properly served; (2) that the allegations establish a "legitimate cause of action"; and (3) sufficient evidence to support the court's independent determination of damages.

6

*Harris,* 388 F. Supp. 3d at 638 (citations and internal quotation marks omitted).

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (reversing denial of motion to set aside entry of default). That preference follows from "the clear policy of the Rules" of Civil Procedure. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Under those same Rules, "trial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom." *Id.* (citing Fed. R. Civ. P. 55(c), 60(b)).

"A default judgment must not differ in kind from . . . what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Default judgment is appropriate in an action for declaratory relief. *E.g.*, *State Farm Fire & Cas. Co. v. Akamiro*, 549 Fed. Appx. 212, 213 (4th Cir. 2014).

7

### A. Defendants' Counterclaims were properly served on Driptite.

Driptite was properly served with the Counterclaims, (Doc. 22, 23), as Defendants filed their pleadings via the Court's electronic filing system ("ECF"), Fed. R. Civ. P. 5(b)(2)(E), and at the time, Driptite was represented by counsel who filed and received filings in this case through ECF. Driptite's counsel acknowledged by e-mail that Driptite received the Counterclaims and understood the applicable response deadline. (Doc. 32-2 at 2). Furthermore, the documents submitted by Mr. Carter refer to Driptite as "Plaintiff/Counterclaim Defendant" demonstrating awareness of the Counterclaims by the President of Driptite. (Doc. 27, 28). Further, Driptite's counsel's withdrawal motion specifically states that counsel "informed Plaintiff of all outstanding filing deadlines." (Doc. 26 at 2). There is no doubt that Driptite was properly served and understood the deadline for its response to Defendants' Counterclaims.

### B. Defendants' Counterclaims establish entitlement to the relief sought.

The Counterclaims, (Doc. 22 pp. 10-27; Doc. 23 pp. 10-28), taken as true, establish that Defendants are entitled to declaratory relief. "[A] request for declaratory relief

8

. . . requires a controversy of sufficient immediacy and reality [as] to warrant the issuance of a declaratory judgment." *Am. Whitewater v. Tidwell*, 770 F.3d 1108, 1119 (4th Cir. 2014) (quotation omitted); *Ketner v. Branch Banking & Tr. Co.*, 143 F. Supp. 3d 370, 384 (M.D.N.C. 2015). As shown in the pleadings, Defendants sell drip pans. The Counterclaims concern the validity of the '351 Patent, its enforceability, and its application to devices sold by Defendants. Resolution of these claims will give Defendants certainty regarding their rights going forward.

As shown below, Defendants have alleged sufficient facts to show they are entitled to the requested declaratory relief.

    **i.    Defendants' allegations show the "'351 Patent's claims are invalid under 35 U.S.C. § 102(b).**

Defendants' allegations show they are entitled to a declaratory judgment that the claims of the '351 Patent, including claim 6, are invalid. A claim is not patentable under 35 U.S.C. § 102(b) if "the invention was . . . described in a printed publication in this . . . country or . . . on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C.

9

§ 102(b) (2010).[1]  The Counterclaims allege that Camco has sold drip pans "substantially identical to the alleged infringing devices" since the 1980s and includes excerpts from printed publications from the 1980s to 2007 advertising such pans.  (Doc. 22, ¶¶ 5-20, 70 & Exhibits A-J); (Doc. 23, ¶¶ 6-20, 71 & Exhibits A-J).  The Counterclaims further allege that more than one year prior to the filing of the patent application, including in December 2008, Driptite "publicly disclosed and offered for sale," on Driptite's website and elsewhere, drip pans that Driptite claims are covered by claims in the '351 Patent. (Doc. 22, ¶¶ 22-29); (Doc. 23, ¶¶ 23-30).  These allegations establish that any relevant claim of the '351 Patent, including claim 6,F is invalid under 35 U.S.C. § 102(b) because the claimed invention was in use, disclosed, and on sale more than one year prior to the

_____

[1] The application that resulted in issuance of the '351 Patent was filed on January 23, 2010.  Accordingly, the application was subject to the law in effect at that time.  Section 102 was subsequently amended by the America Invents Act, Pub. L. 112-29, § 3(b), 125 Stat. 284, 285-87 (2011), and those changes are effective for applications filed on or after March 16, 2013.

application filing date of January 23, 2010.  *See* 35 U.S.C. § 102(b) (2010).

Accordingly, Defendants are entitled to a declaration that the claims of the '351 Patent, including claim 6, are invalid.

### ii. Defendants' allegations show the patent applicant committed inequitable conduct before the U.S. Patent and Trademark Office.

Defendants' allegations show they are entitled to a declaratory judgment that the '351 Patent is unenforceable as a result of inequitable conduct before the U.S. Patent and Trademark Office.  "To prove inequitable conduct, the accused infringer must provide evidence that the applicant (1) misrepresented or omitted material information, and (2) did so with specific intent to deceive the [U.S. Patent and Trademark Office]." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1334 (Fed. Cir. 2011).  To prevail on a claim that a patent applicant committed inequitable conduct by failing to disclose a prior commercial sale, the accused infringer must show "that the applicant knew of the . . . prior commercial sale, knew that it was material, and made a deliberate decision to withhold it." *Energy Heating, LLC v.*

11

*Heat On-The-Fly, LLC*, 889 F.3d 1291, 1299 (Fed. Cir. 2018). "[I]nequitable conduct regarding any single claim renders the entire patent unenforceable." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011)

Here, the Counterclaims allege that Driptite disclosed and offered for sale the claimed invention more than one year prior to the patent application. (Doc. 22, ¶¶ 22-29) (Doc. 23, ¶¶ 23-30). Defendants allege that the "patent applicant never disclosed to the patent examiner that Driptite had been advertising and offering its combination washer and dryer pan more than one year prior to the date of its patent application." (Doc. 22, ¶ 32); (Doc. 23, ¶ 33). While not necessary in light of the default, it is notable that this allegation is further confirmed by the prosecution history previously filed in this case. (Doc. 10-2). Namely, it shows no such disclosure.

The Counterclaims further allege that the patent applicant "intended to deceive the U.S. Patent and Trademark Office and the patent examiner regarding the state of the prior art in order to obtain a patent covering devices the applicant had sold more than a year prior to its patent

12

application but which the applicant failed to disclose to the examiner." (Doc. 22, ¶ 58); (Doc. 23, ¶ 59). The patent applicant also specifically represented to the examiner that pans sized to contain a washer and dryer side-by-side as in the claimed invention "[h]ave a basin with twice the footprint of the prior art," (Doc. 22, ¶¶ 47-49); (Doc. 23, ¶¶ 48-50), *see* (Doc. 10-2, pp. 48, 70), even though Driptite had advertised such double-wide pans for more than a year prior to the patent application.

Defendants' allegations and the default therefore establishes that the patent applicant knew of the prior public disclosures of the invention and that it was on sale more than a year before the application date, knew that the prior disclosures and advertising of the invention were material to patentability, and that the applicant intentionally failed to disclose these things to the patent examiner.

Accordingly, under the case law cited above, Defendants are entitled to a declaration that the entire '351 Patent is unenforceable as a result of inequitable conduct.

13

### iii. Defendants' allegations show the alleged infringing devices do not infringe the '351 Patent.

Defendants' allegations show that they are entitled to a declaration that the alleged infringing devices do not infringe the '351 Patent. A claim for non-infringement requires only sufficient factual allegations to show that the alleged infringing devices do not meet at least one claim limitation of the asserted patent. E.g., *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.,* 319 F.R.D. 269, 273-74 (N.D. Cal. 2017).

Defendants allege that the alleged infringing devices lack certain features meeting the claim limitations of the '351 Patent's independent claims. (Doc. 22, ¶¶ 61-68); (Doc. 23, ¶¶ 62-69). In particular, among other things, the patent applicant intentionally abandoned any claim to devices that are not sized to fit two appliances side by side, both by arguing to distinguish single-appliance pans from the claimed invention and by amending the claims to replace a limitation that the claimed invention fit a single appliance with a limitation that the invention be sized to fit two devices. (Doc. 22, ¶¶ 48-51); (Doc. 23, ¶¶ 49-52); *see Amgen Inc. v.*

14

*Coherus BioSciences Inc.*, 931 F.3d 1154, 1159-61 (Fed. Cir. 2019) (explaining how patent prosecution history can establish surrender of patent scope by argument or by claim amendment). None of the alleged infringing devices are sized to fit two appliances side by side. (Doc. 22, ¶¶ 61-65); (Doc. 23, ¶¶ 62-66). The alleged infringing devices therefore do not meet the claim limitation (contained in all claims of the '351 Patent) that they be "sized to contain at least one washing machine and at least one dryer," either literally or under the doctrine of equivalents. The alleged infringing devices also lack the claimed "at least one detachable slide wedge which engages with the front wall" and lack "at least one damping means secured to a substantially flat bottom panel." (Doc. 22, ¶¶ 66-67); (Doc. 23, ¶¶ 67-69).

Because the alleged infringing devices do not meet all of the limitations of any of the '351 Patent's claims, Defendants are entitled to a declaration of non-infringement as to all of the alleged infringing devices.

### C. Defendants do not seek damages.

Each of Defendants' Counterclaims seeks declaratory relief rather than damages. Accordingly, the Court need not

15

make any determination of damages on this motion.  Of course, Defendants retain the right to seek recovery of their attorneys' fees from Driptite after judgment is entered.  Fed. R. Civ. P. 54(d)(2); 35 U.S.C. § 285.

Because Defendants have shown that Driptite was properly served but failed to timely answer, that Defendants' Counterclaims sufficiently plead claims for declaratory relief, and no analysis of damages is required, Defendants respectfully request the Court enter the requested declaratory relief.

## II.  Plaintiff's claims should be dismissed with prejudice.

Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."

Dismissal is appropriate where the plaintiff has "'failed to respond to a specific directive from the [trial] court.'" *Attkisson v. Holder*, 925 F.3d 606, 625-26 (4th Cir. 2019), as amended (June 10, 2019) (quoting *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989)).  The court should consider "(1) the plaintiff's degree of personal responsibility; (2) the amount

16

of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal," although these factors are "not a rigid four-prong test." *Attkisson*, 925 F.3d at 625 (quotations omitted). In particular, where a plaintiff has been given an "explicit warning" that dismissal could result from failure to comply with an order, "the district court ha[s] little alternative to dismissal" because "[a]ny other course would . . . place the credibility of the court in doubt and invite[] abuse." *Ballard*, 882 F.2d at 96; *see Scales v. Webb*, No. 1:15CV192, 2017 WL 2424550, at *5 (M.D.N.C. June 5, 2017) (applying factors and dismissing claims).

Because this Court explicitly warned Driptite that its claims could be dismissed if counsel did not appear within 30 days of April 9, 2020, the Court "ha[s] little alternative to dismissal." *Ballard*, 882 F.2d at 96.

The other factors discussed in *Attkisson* also support dismissal.

As to the first factor, the Plaintiff's personal responsibility for failing to obey the Court's order,

17

Defendants note that the failure of Driptite to have counsel appear is entirely and solely the fault of Plaintiff. Mr. Carter specifically asked the Court to allow Driptite's attorneys to withdraw from the case and sought to represent the company on his own in violation of LR 11.1(a). (Doc. 27, 28).

Indeed, it seems that rather than obtain counsel, Driptite, through Mr. Carter, has taken to Twitter to seek relief by attempting to contact the President of the United States. *See* Exhibit A, Printout of recent tweets by @FCarter28121130, *available at* https://twitter.com/search?q=(from%3AFCarter28121130)%20since%3A2020-03-25&src=typed_query&f=live. Among other things, this Twitter account, which by all appearances belongs to Mr. Carter, specifically refers to this litigation, asserting:

> It appears the Judge thinks he can side with, favor, and become friends with the Infringers "Camco" that are MFG. the Infringing products in Ningbo, China . . . .

https://twitter.com/FCarter28121130/status/1256222029658894340 (dated May 1, 2020).[2]

---

[2] Camco actually molds the pans in Greensboro, North Carolina.

18

As to the second factor, Defendants have spent significant resources responding to a complaint that was spurious from the beginning, including because the '351 Patent seems to have been obtained by inequitable conduct and because the patent allegedly covers drain pans of a kind that Camco has manufactured since the 1980s. Defendants would be prejudiced by anything other than dismissal.

As to the third factor, Plaintiff has deliberately proceeded in a dilatory fashion including by opposing dismissal of this action despite Driptite's apparent knowledge that the '351 Patent was invalid and was obtained by inequitable conduct. For instance, shortly after the suit was filed, Camco's counsel disclosed Camco's decades-long sales of drip pans that are substantially the same as the alleged infringing devices. Exhibit B (April 11, 2019 e-mail from Camco's counsel to Driptite's counsel).[3] Moreover, as shown by the Counterclaims, Driptite was selling the claimed invention more than a year before the patent application was

---

[3] Exhibits A, B, D, E, F, G, H, I, and J to the Counterclaims were provided by large file transfer link included in the e-mail.

19

filed and therefore knew all along the '351 Patent was invalid and was obtained by inequitable conduct. Nevertheless, Driptite continued with this action.

As to the fourth factor, because the Court explicitly warned Driptite that its claims could be dismissed for failure to have counsel appear within 30 days of April 9, 2020, lesser sanctions would not be appropriate.

In sum, Plaintiff's claims should be dismissed with prejudice as a result of Plaintiff's failure to comply with the Court's April 9, 2020 order.

**CONCLUSION**

Defendants have shown that entry of default judgment on Defendants' Counterclaims and dismissal of Plaintiff's claims are both appropriate. Defendants therefore respectfully request that the Court enter judgment on Defendants' Counterclaims and dismiss all of Plaintiff's claims with prejudice.

Respectfully submitted this 12th day of May, 2020.

/s/ Matthew B. Tynan
David Sar
N.C. State Bar No. 23533
dsar@brookspierce.com
Matthew B. Tynan
N.C. State Bar No. 47181

20

mtynan@brookspierce.com
**BROOKS, PIERCE, MCLENDON,**
  **HUMPHREY & LEONARD, L.L.P.**
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:    (336) 271-3175

*Attorneys for Defendants*

21

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Local Rule 7.3(d), namely, the word count limitation.

This the 12th day of May, 2020.

/s/  Matthew B. Tynan
Matthew B. Tynan
N.C. State Bar No. 47181
mtynan@brookspierce.com
**BROOKS, PIERCE, MCLENDON,
  HUMPHREY & LEONARD, L.L.P.**
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:    (336) 271-3171
mtynan@brookspierce.com

*Attorney for Defendants*

22

<h1 style="text-align:center"><u>CERTIFICATE OF SERVICE</u></h1>

I hereby certify that I electronically filed the foregoing **Brief Supporting Motion to Dismiss and for Default Judgment** with the Clerk of Court using the CM/ECF system, and I hereby certify that I have mailed the same document(s) identified above to the following non-CM/ECF participants:

Ultimate Home Protector Pans, Inc.
c/o Frank L. Carter
538 Center Road
Conneaut, Ohio 44030
frankcarter@driptite.com

Ultimate Home Protector Pans, Inc. d/b/a
Driptite
Attn: Frank Carter
25422 Trabuco Rd., Ste. 105-622
Lake Forest, CA 92630

Ultimate Home Protector Pans, Inc. d/b/a
Driptite
Attn: Frank Carter
P.O. Box 622
North Kingsville, OH 44068

This the 12th day of May, 2020.

/s/ Matthew B. Tynan
Matthew B. Tynan
*Attorney for Defendants*

23